UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>AHMAD IRAVANI,<br><br>Defendant. | Case: 1:21-mj-00522<br>Assigned to: Judge Meriweather, Robin M.<br>Assign Date: 7/12/2021<br>Description: COMPLAINT W/ ARREST WARRANT<br><br><br>**FILED UNDER SEAL** |

### AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, George Alexander, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent of the Federal Bureau of Investigation ("FBI") assigned to the Washington Field Office counterterrorism squad and have been employed by the FBI since approximately January 2002. I am currently assigned to investigate counterterrorism-related crimes. My background prior to my current assignment includes extensive experience involving the investigation of wire fraud, mail fraud, securities fraud, financial institution fraud and money laundering, among other violations of federal law. Since joining the FBI, I have received training in general law enforcement and in specialized areas, including fraud and counterterrorism. As a Special Agent of the FBI, I am authorized to investigate crimes and execute search warrants involving violations of federal law, including Title 18 of the United States Code.

2. The facts set forth below are based upon my own observations, investigative reports, records, and information provided to me by other law enforcement officers and people with knowledge of the case. This affidavit does not represent every fact that law enforcement knows about this investigation. Rather, it is submitted for the limited purpose of establishing probable cause for the issuance of a criminal complaint against AHMAD IRAVANI ("IRAVANI")

for violations of the laws of the United States, that is, wire fraud, in violation of Title 18, United States Code, Section 1343.

## BACKGROUND

3. The Center for the Study of Islam and the Middle East ("CSIME") is a not-for profit organization that was founded in or around 2010. According to its website, CSIME is "a Washington-based nonpartisan, nonprofit organization committed to interfaith dialogue and the study of Islam and the Middle East," and has an office located at 319 V Street N.E., Washington, D.C. 20002.[1]

4. Defendant AHMAD IRAVANI, a resident of Montgomery County, Maryland, is the founder and executive director of CSIME.

5. Records obtained from the Internal Revenue Service ("IRS") reveal that as part of IRAVANI's 2010 sworn application on behalf of CSIME for 501(c)(3) tax-exempt status, IRAVANI affirmed that he was an owner of the property located at 319 V Street N.E., Washington, D.C. 20002, and that he leased it to CSIME in connection with the organization's work.

6. On or about March 24, 2010, IRAVANI opened a business bank account ending in -3004 at TD Bank, N.A. for CSIME (hereinafter, the "TD Bank account"). During the relevant period, IRAVANI was the sole signatory on the TD Bank account, and the mailing address for the TD Bank account was listed as 319 V Street N.E., Washington, D.C. 20002.

7. During the relevant period, CSIME-related mail, including correspondence concerning its TD Bank account, was sent to this Washington, D.C. address.

---

[1] *See* https://csime.org (last accessed July 11, 2021).

8. Victim Organization 1 is an organization based in Oslo, Norway, that facilitates international dialogue and conducts research on the conditions of peaceful relations between states, groups, and people.

9. On multiple occasions during the relevant period, on behalf of CSIME, IRAVANI participated in overseas conferences and meetings sponsored by various organizations, including Victim Organization 1, and was reimbursed by these organizations for his travel to and from these overseas events.

## PROBABLE CAUSE

### *The Scheme to Defraud*

10. The investigation revealed that from in or around at least as early as October 1, 2016, through in or around at least December 2018, IRAVANI devised and intended to devise a scheme to defraud various individuals and entities, through the use of CSIME, for his own personal benefit. For example, although IRAVANI advertised the 319 V Street N.E., Washington, D.C. 20002, property as being used in connection with his nonprofit organization, the investigation revealed that the property appears to have been used in ways inconsistent with permissible uses for a nonprofit organization. During this same period, IRAVANI also devised and intended to devise a scheme to defraud non-governmental organizations, including Victim Organization 1, which IRAVANI carried out by using CSIME and its bank accounts to obtain money by means of materially false and fraudulent pretenses, representations, and promises. As part of the fraudulent scheme, and through the use of CSIME and its bank accounts, IRAVANI knowingly submitted tens of thousands of dollars' worth of false travel vouchers to victim organizations, including Victim Organization 1, for the purpose of seeking reimbursement for the costs of flights not taken, travel itineraries not used, or both.

11. In furtherance of the scheme, IRAVANI would book flights to and from a specific overseas event to which he had been invited to participate on behalf of CSIME by Victim Organization 1, or others, through the travel booking website Expedia using his personal credit card. IRAVANI would then quickly cancel this Expedia reservation and receive a refund in connection with the booking. Around the same time, IRAVANI would also book a cheaper set of international flights through another travel booking website, then use this less expensive set of tickets to travel to and from the overseas event.

12. Thereafter, IRAVANI would submit a request for reimbursement to the Victim Organization 1, and others, representing that he had traveled on the more expensive cancelled Expedia itinerary flights, and often attaching the canceled Expedia itinerary in support thereof, when in fact and as he well knew, IRAVANI had actually traveled on the cheaper set of flights.

13. On numerous occasions between October 1, 2016, and December 2018, including those detailed below, as a result of IRAVANI's materially false and fraudulent representations, and as IRAVANI well knew, Victim Organization 1, and others, reimbursed IRAVANI including via electronic wire transfer to the CSIME TD Bank account, for the cost of air travel in excess of the amount that he was actually entitled to.

*October 2016 Round Trip Travel from Washington D.C. for Event in Bern, Switzerland*

14. The investigation revealed that in or around mid-2016, Victim Organization 1 invited IRAVANI, on behalf of CSIME, to travel from Washington, D.C. to Bern, Switzerland in order to participate in a meeting involving participants from the United States, Iraq, and other countries scheduled for October 18,19, 2016. As part of this invitation, Victim Organization 1 agreed to reimburse IRAVANI for his travel to and from the event.

15.     Thereafter, Expedia records obtained by law enforcement revealed that on or about October 1, 2016, IRAVANI electronically purchased Expedia itinerary 7214662005464 for approximately $5,495.43, using his personal credit card. Pursuant to this Expedia itinerary, IRAVANI reserved a flight departing October 14, 2016, on Scandinavian Airlines Flight No. 926 from Washington/Dulles to Copenhagen, then a flight on Scandinavian Airlines Flight No. 1416 from Copenhagen to Stockholm, followed by a Scandinavian Airlines Flight No. 2615 from Stockholm to Geneva. The Expedia itinerary detailed an October 21, 2016, return flight on Scandinavian Airlines Flight No. 618 from Geneva to Copenhagen, followed by Scandinavian Airlines Flight No. 925 from Copenhagen to Washington/Dulles.

16.     According to Expedia records and emails obtained via a search warrant executed as part of the investigation, on or about October 2, 2016, less than one day after booking his Expedia itinerary, IRAVANI canceled it and subsequently received an email from Expedia confirming that his itinerary had been cancelled and that $5,495.43 would be refunded to his credit card.

17.     Email and bank records obtained as part of the investigation revealed that less than one hour after IRAVANI canceled the Expedia itinerary, he purchased another less expensive set of outbound flights through the United Airlines website for approximately $97.50 and 70,000 frequent flier miles, using his personal credit card. Pursuant to this United itinerary, IRAVANI reserved a flight departing on October 16, 2016, on Scandinavian Airlines Flight No. 926 from Washington/Dulles to Copenhagen, followed by a flight on Scandinavian Airlines Flight No. 613 from Copenhagen to Geneva.

18.     On or about October 14, 2016, IRAVANI also purchased a less expensive return ticket via the United Airlines website for approximately $972.29, using his personal credit card. Pursuant to this United itinerary, IRAVANI reserved a series of return flights from the Bern event

that included transit through Zurich, Abu Dhabi, Manila, and Kuala Lumpur, before ultimately arriving back at Washington/Dulles on or about November 6, 2016.

19. Travel records obtained by law enforcement revealed that IRAVANI was a confirmed passenger on the October 16, 2016 outbound flight from Washington/Dulles to Copenhagen, and the November 6, 2016 inbound flight from Abu Dhabi to Washington/Dulles. Likewise, travel records also confirmed that IRAVANI was not on board the October 14, 2016 outbound, or the October 22, 2016, inbound, flights listed in the Expedia itinerary.

20. Thereafter, upon conclusion of the conference and as part of an email dialogue about travel reimbursement during which Victim Organization 1 asked IRAVANI for boarding passes and receipts, on or about October 19, 2016, IRAVANI sent an email to Victim Organization 1 in which he stated "attached is a list of expenses [. . .]" The attachments to the email included a typed invoice written on CSIME letterhead bearing the address of 319 V Street N.E., Washington, DC 20002, listing IRAVANI's purposed travel expenses, to include $5,495 for "air ticket." Also attached in support of the requested funds were several pages of receipts, including a copy of the cancelled October 1, 2016 Expedia itinerary.

21. Bank records reveal that on or about November 11, 2016, as a result of the false and fraudulent flight information that IRAVANI knowingly and willfully submitted to Victim Organization 1, IRAVANI caused to be transmitted by means of wire communication in interstate commerce an electronic wire transfer in the approximate amount of $4,361 from a Norwegian bank account belonging to Victim Organization 1, to the CSIME TD Bank account.[2]   Internal

---

[2] Although this payment appears on its face to be less than the $5,495.43 submitted by IRVANI in connection with purported airfare expenses, bank records, emails, and documents obtained from Victim Organization 1 reveal that prior to this November 11, 2016, wire payment, IRAVANI was also reimbursed additional funds encompassing both travel expenses from the Bern event and other business arrangements between CSIME and Victim Organization 1.

accounting records obtained by law enforcement from Victim Organization 1 also reflect reimbursement paid to IRAVANI through the CSIME TD Bank account, via electronic wire transfer and other means, based on the false and fraudulent airfare representations made by IRAVANI to the organization.

### *May 2018 Round Trip Travel from Washington D.C. for Event in London, England*

22. The investigation revealed that in or around early 2018, Victim Organization 1 invited IRAVANI, on behalf of CSIME, to travel from Washington D.C. to London, England, to participate in an organizational planning meeting scheduled for May 14-15, 2018. As part of this invitation, Victim Organization 1 agreed to reimburse IRAVANI for his travel to and from the event.

23. Financial records obtained during the investigation reveal that on or about March 17, 2018, IRAVANI purchased round trip flights through the United Airlines website for approximately $629.86 using his personal credit card. Pursuant to this United itinerary, IRAVANI reserved a flight departing May 12, 2018, on United Airlines Flight No. 918 from Washington/Dulles to London, and a return flight departing May 20, 2018, on United Airlines Flight No. 919 from London to Washington/Dulles. On or about May 20, 2018, IRAVANI also received an email from United Airlines confirming his itinerary and including the receipt for his flights purchased via United for approximately $629.86.

24. The investigation revealed that on or about April 15, 2018, IRAVANI also purchased a significantly more expensive set of tickets for the same flights between Washington/Dulles and London using Expedia. Specifically, IRAVANI purchased Expedia itinerary 7345105538053 for approximately $3,656.91, using his personal credit card. Pursuant to this Expedia itinerary, IRAVANI reserved a flight departing May 12, 2018, on United Airlines

Flight No. 918 from Washington/Dulles to London, and a May 20, 2018, return flight on United Airlines Flight No. 919 from London to Washington/Dulles.

25. Email search warrant returns, bank records, and Expedia records obtained during the investigation revealed that less than ten minutes after purchasing this Expedia itinerary, IRAVANI cancelled it. That same day, IRAVANI received email communications from Expedia confirming that

26. Travel records obtained by law enforcement revealed that IRAVANI was a confirmed passenger on the May 12, 2018, outbound flight from Washington/Dulles to London, and the May 20, 2018, inbound flight from London to Washington/Dulles.

27. Email communications between Victim Organization 1 and IRAVANI revealed discussions regarding the purchase of plane tickets. For example, in response to a question from Victim Organization 1 about whether IRAVANI purchased his itinerary 7345105538053 had been canceled, and that IRAVANI's credit card would be refunded approximately $3,656.91.  airfare himself or used a travel agency to do so, IRAVANI confirmed that he purchased the tickets himself.

28. On or about May 22, 2018, IRAVANI sent an email to Victim Organization 1 with the subject line "London Travel Expenses," seeking reimbursement for his recent travel to London on behalf of CSIME. In the body of the email, IRAVANI wrote "please see the attachments and let me know if you need more information." Attachments to the email included a typed list of IRAVANI's purposed travel expenses, to include "Ticket (Washington-London-Washington): $3,657."

29. On or about May 29, 2018, Victim Organization 1 emailed IRAVANI noting that they were processing the travel reimbursement for London but still needed "[. . .] the ticket (or

receipt) showing the price (3657 USD)." On or about May 31, 2018, IRAVANI responded via email, apologizing for forgetting to send it, and attaching a copy of cancelled Expedia itinerary 7345105538053 indicating airfare purchased for the approximate amount of $3,656.91.

30. Bank records reveal that on or about July 5, 2018, as a result of the false and fraudulent flight information that IRAVANI knowingly and willfully submitted to Victim Organization 1 for his travel on behalf of CSIME, IRAVANI caused to be transmitted by means of wire communication in interstate commerce an electronic wire transfer in the approximate amount of $3,840 from a Norwegian bank account belonging to Victim Organization 1, to a Bank of America account ending in -7610 controlled solely by IRAVANI. Internal accounting records obtained by law enforcement from Victim Organization 1 also reflect reimbursement paid to IRAVANI, via electronic wire transfer and other means, based on the false and fraudulent airfare representations made by IRAVANI to the organization.

***December 2018 Round Trip Travel from Washington D.C. for Event in Istanbul, Turkey***

31. The investigation also revealed that in late 2018, Victim Organization 1 invited IRAVANI, on behalf of CSIME, to travel from Washington D.C. to Istanbul, Turkey to participate in a conference hosted by Victim Organization 1 called "Trust Building in Iraq: Current Challenges and Opportunities." The conference was scheduled for December 8-10, 2018. As part of this invitation, Victim Organization 1 agreed to reimburse IRAVANI for his travel to and from the event.

32. Financial records revealed that on or about November 18, 2018, IRAVANI purchased round trip flights through the United Airlines website for approximately 100,000 frequent flier miles and $148.63, using his personal credit card. Pursuant to this United itinerary, IRAVANI reserved a flight departing December 6, 2018, on United Airlines Flight No. 946 from

Washington/Dulles to Amsterdam, followed by Turkish Airlines Flight No. 1952 from Amsterdam to Istanbul. On the same United Airlines itinerary, IRAVANI purchased a return flight departing December 12, 2018, on Turkish Airlines Flight No. 1591 from Istanbul to Frankfurt, followed by a December 13, 2018, Lufthansa Airlines Flight No. 418 from Frankfurt to Washington/Dulles.

33. Approximately twelve minutes after booking his flight on the United website, IRAVANI also purchased a significantly more expensive set of tickets for round trip travel between Washington/Dulles and Istanbul using Expedia. Specifically, IRAVANI purchased Expedia itinerary 7392920644331 for approximately $5,008.13, using his personal credit card. Pursuant to this Expedia itinerary, IRAVANI reserved a flight departing December 6, 2018, on United Airlines Flight No. 106 from Washington/Dulles to Munich, followed by Turkish Airlines Flight No. 1630 from Munich to Istanbul. IRAVANI also purchased return flights, one leg of which was the same flight that he had already purchased as part of his United Airlines itinerary. That is, he booked a return flight departing December 12, 2018, on Turkish Airlines Flight No. 1591 from Istanbul to Frankfurt, followed by a flight departing December 13, 2018, on United Airlines Flight No. 8827 from Frankfurt to Washington/Dulles.

34. Email search warrant returns, bank records, and Expedia records obtained during the investigation revealed that on or about November 19, 2018, less than one day after purchasing this Expedia itinerary, IRAVANI cancelled it. That same day, IRAVANI received email communications from Expedia confirming that Expedia itinerary 7392920644331 had been cancelled, and that approximately $5,008.13 had been refunded to IRAVANI's credit card.

35. Travel records obtained by law enforcement revealed that IRAVANI was a confirmed passenger on the same flights as those listed on his United Airlines itinerary. That is, travel records confirm IRAVANI was a passenger on the December 6, 2018, United Airlines Flight

No. 946 outbound flight from Washington/Dulles, and on the December 12, 2018, Lufthansa Airlines Flight No. 418 inbound flight from Frankfurt to Washington/Dulles.

36. After the conclusion of the conference, on or about December 15, 2018, IRAVANI sent an email to Victim Organization 1 with the subject line "Expenses doe [*sic*] Istanbul Meeting." In the body of the email, IRAVANI asked for Victim Organization 1 to send him reimbursement to the CSIME TD Bank account and directed the organization to review the four attachments to the email. One of the attachments was titled "Istanbul Meeting Total." It was a typed invoice written on CSIME letterhead bearing the address of 319 V Street N.E., Washington, DC 20002, listing IRAVANI's purposed travel expenses, to include $5,008 for "Iravani Ticket." Also attached in support of the requested funds was, amongst other things, a copy of the cancelled November 18, 2018, Expedia itinerary 7392920644331 indicating airfare purchased for the approximate amount of $5,008.13.

37. Bank records reveal that on or about December 21, 2018, as a result of the false and fraudulent flight information that IRAVANI knowingly and willfully submitted to Victim Organization 1 for his travel on behalf of CSIME, IRAVANI caused to be transmitted by means of wire communication in interstate commerce an electronic wire transfer in the approximate amount of $8,271 from a Norwegian bank account belonging to Victim Organization 1, to the CSIME TD Bank account.[3] Internal accounting records obtained by law enforcement from Victim Organization 1 also reflect inflated reimbursement paid to IRAVANI, via electronic wire transfer and other means, based on the false and fraudulent airfare representations made by IRAVANI to the organization.

---

[3] This electronically transferred reimbursement in the approximate amount of $8,271 includes money for both the fraudulent air travel representations, and for other expenses that IRAVANI submitted to Victim Organization 1 for reimbursement.

## CONCLUSION

Based on all of the foregoing evidence, and based on my training and experience, I respectfully submit that there is probable cause to believe that, between at least October 2016 and continuing through at least March 2019, including on dates specific above, IRAVANI committed violations of the laws of the United States, that is, wire fraud, in violation of Title 18, United States Code, Section 1343.

Date: July 12, 2021

Respectfully submitted,

_____
GEORGE ALEXANDER, SPECIAL AGENT
FEDERAL BUREAU OF INVESTIGATION

*Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone, this 12th day of July, 2021.*

_____
HONORABLE ROBIN M. MERIWEATHER
UNITED STATES MAGISTRATE JUDGE